ORDERED.

Dated: December 14, 2015

_____
Michael G. Williamson
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Case No. 8:13-bk-14762-MGW |
| | Chapter 7 |
| Wallace Edward Clark and | |
| Sara Crawford Clark, | |
|     Debtors. | |
| _____/ | |
| Michael Perry, | Adv. No. 8:14-ap-00133 |
|     Plaintiff, | |
| v. | |
| Wallace Edward Clark, | |
|     Defendant. | |
| _____/ | |

**MEMORANDUM OPINION ON SUMMARY JUDGMENT**

To prevail on a claim under Bankruptcy Code § 523(a)(6), a creditor must prove that the debtor deliberately and intentionally injured him by a willful and malicious act. Here, Michael Perry, who had a $2.8 million claim against Wallace Clark, one of the Debtors in this case, alleges that Clark deliberately and intentionally injured him by fraudulently transferring away the only assets that could satisfy Perry's claim against him. But the undisputed facts show there was

a legitimate purpose for the transfer. Because there was a legitimate purpose for the transfer, Perry cannot prove as a matter of law that Clark acted maliciously, and as a consequence, Clark is entitled to judgment as a matter of law on Perry's § 523(a)(6) claim.

## Background[1]

Clark previously owned BGW Marketing Company, LLC, which manufactured and distributed shoes under the "Bellini Shoes" and "Bellini Kids" trade names. "Bellini" and "Bellini Kids" were both registered trademarks owned by BGW.[2] At some point, the company began having financial problems,[3] so Clark, as president of the company, looked to his family for help.[4]

Clark's stepdaughter (Diann Crawford) and her husband (Michael Perry) persuaded LaSalle Bank to loan BGW $2.5 million to pay off a line of credit it had with Bank One.[5] LaSalle Bank later made a $400,000 loan to Clark individually.[6] To secure the loans from LaSalle Bank, BGW gave LaSalle Bank a first priority security interest in the "Bellini" and "Bellini Kids" trademarks, which apparently were worth around $5 million at the time, and Crawford and Perry agreed to personally guarantee the indebtedness.[7]

---

[1] The parties helpfully filed a stipulation of facts. Adv. Doc. No. 53.

[2] *Id.* at ¶ 7.

[3] *Id.* at ¶ 8.

[4] *Id.* at ¶ 9.

[5] *Id.* at ¶ 10.

[6] *Id.*

[7] *Id.* at ¶¶ 11 & 12.

When BGW eventually defaulted on its loans with LaSalle Bank, Crawford, who had personally guaranteed the loans, paid them off.[8] In particular, Crawford paid LaSalle Bank nearly $2.4 million between May 29, 2008, and September 30, 2008.[9] In exchange for Crawford's last payment on September 30, 2008, LaSalle Bank transferred all of its interests in its loans with Clark to Crawford, who, in turn, sued Perry (whom she had divorced sometime after guaranteeing BGW's debt to LaSalle Bank) in state court in Illinois, seeking approximately $1.2 million (half of what she paid LaSalle Bank) in contribution because Perry had likewise guaranteed BGW's loans.[10]

Two days before the Illinois state court granted Perry leave to file a third-party complaint against Clark, Clark and Crawford executed a document titled "Assignment of Trademark."[11] In the preamble to the assignment, the parties stated that BGW had previously licensed its trademarks to Bellini, Chang & Clark—a new entity that Clark was doing business through—but that BGW and Bellini, Chang & Clark had been operating under the assumption that Crawford had taken assignment of the trademarks by virtue of paying off LaSalle Bank.[12] According to the assignment, Crawford held the trademarks and was willing to continue licensing them to Bellini, Chang & Clark to ensure she was repaid the amount that she paid LaSalle Bank.[13]

---

[8] *Id.* at ¶¶ 20-21.

[9] *Id.* at ¶ 20.

[10] *Id.* at ¶¶ 21 & 23.

[11] *Id.* at ¶ 28; Adv. Doc. No. 53-6.

[12] Adv. Doc. No. 53-6 at 1.

[13] *Id.* at 1-2.

On the same day that she executed the assignment with BGW, Crawford memorialized the exclusive license agreement with Bellini, Chang & Clark.[14] Under the license agreement, Bellini, Chang & Clark agreed to pay Crawford 3% in royalties for the first $3 million in sales, 4% in royalties for the next $4 million, 5.5% in royalties for the next $4 million, and 7% in royalties for anything more than $11 million.[15] Once she received $2.8 million under the license agreement, then Crawford agreed to assign the trademarks back to Bellini, Chang & Clark.[16]

Within two months after the trademark assignment and license agreements were signed, Perry sued Clark and BGW for breach of contract, indemnification (express and implied), fraudulent transfer, and to impose a constructive trust.[17] When Clark and BGW failed to respond to the third-party complaint, the Illinois state court entered a default judgment against them on the fraudulent transfer claim.[18] That prompted Clark to file for chapter 7 bankruptcy.

Perry filed this complaint seeking to have the amounts Clark owes him determined to be nondischargeable under Bankruptcy § 523(a)(6).[19] According to Perry, Clark knowingly transferred the "Bellini" and "Bellini Kids" trademarks to Crawford (his stepdaughter) at a time when he knew he would be liable to Perry for contribution. Because the trademarks were BGW's most important assets, Perry alleges that Clark knew that the fraudulent transfer was substantially

---

[14] Adv. Doc. No. 53-7.

[15] *Id.* at ¶ 10.

[16] Adv. Doc. No. 53-6 at ¶ 3; Adv. Doc. No. 53-7 at ¶ 9(c).

[17] Adv. Doc. No. 53 at ¶¶ 33-35.

[18] *Id.* at ¶ 37; Adv. Doc. No. 53-11.

[19] Adv. Doc. No. 1.

certain to injure Perry by hindering his collection efforts. Both parties have now sought summary judgment on Perry's § 523(a)(6) claim.[20]

## Conclusions of Law

To prevail on his § 523(a)(6) claim, Perry must prove that Clark deliberately and intentionally injured him by a willful and malicious act.[21] "Malicious" means "wrongful and without just cause or excessive."[22] And as the Supreme Court has explained, "willful" modifies "injury" in § 523(a)(6), so a claim under § 523(a)(6) requires that the debtor do one of two things for a debt to be nondischargeable: (1) commit an intentional act for the purpose of causing injury; or (2) intentionally commit an act that is substantially certain to cause injury.[23] Perry is correct that fraudulently transferring assets to hinder or delay a creditor can give rise to a claim under § 523(a)(6).

The Eleventh Circuit recognized such a claim in *In re Jennings*.[24] In that case, a minor (Brandon Maxfield) sued the debtor's ex-husband for a gun-related injury. While the case was pending, the debtor's ex-husband instructed the debtor to help facilitate the transfer of real property from a company he owned to another former spouse of his. When Maxfield learned of the transfer, he sued the debtor in California state court. After the debtor's ex-husband was hit with a $24.7 million jury verdict, the debtor (who was potentially liable for that judgment under joint venture, partnership, and alter ego theories) filed for bankruptcy.

---

[20] Adv. Doc. Nos. 31, 38, 49-51.

[21] *In re Garcia*, 442 B.R. 848, 849 (Bankr. M.D. Fla. 2011); *Old Republic Nat'l Title Ins. Co. v. Vermilio (In re Vermilio)*, 457 B.R. 854, 861 (Bankr. M.D. Fla. 2011).

[22] *Maxfield v. Jennings (In re Jennings)*, 670 F.3d 1329 (11th Cir. 2012).

[23] *Kawaauhau v. Geiger*, 523 U.S. 57 (1998).

[24] *In re Jennings*, 670 F.3d at 1332-33.

During her bankruptcy case, the California state court determined that the debtor was liable as a joint venturer for the $24.7 million judgment, in addition to $3 million for conspiracy to commit fraudulent transfer (the value of the property she helped transfer). So Maxfield sued to have the $3.9 million fraudulent transfer judgment determined to be nondischargeable. The bankruptcy court initially found that conspiracy to commit fraudulent transfer could not give rise to a § 523(a)(6) claim and later, on remand, that the evidence was insufficient as a matter of law to establish that the debtor intended to cause harm or injury to Maxfield.

The district court reversed, and on appeal, the Eleventh Circuit held that Maxfield satisfied the elements of his § 523(a)(6) claim as a matter of law.[25] The Eleventh Circuit, relying on Ninth Circuit precedent, concluded that Maxfield suffered an injury to his property because he had obtained a fraudulent transfer judgment, complete with a finding that the debtor had intended to prevent Maxfield from collecting on his personal injury judgment.[26] And the Eleventh Circuit concluded the debtor acted willfully and maliciously because she knew that the purpose of the transfer was to keep the property out of Maxfield's hands.[27]

This proceeding, however, is distinguishable from *Jennings*. For starters, unlike in *Jennings*, a state court had not previously ruled that Clark intended to prevent Perry from collecting on his claim against Clark. It is true that Perry obtained a default judgment on his fraudulent transfer claim against Clark in Illinois. But that default judgment does not contain any specific findings regarding fraudulent intent.[28] The default judgment here simply finds that Perry

---

[25] *Id.* at 1334.

[26] *Id.* at 1333 (relying on *In re Bammer*, 131 F.3d 788-91 (9th Cir. 1997)).

[27] *Id.* at 1334.

[28] Adv. Doc. No. 53-11.

is entitled to final judgment on his fraudulent transfer and other claims because Clark failed to answer.[29] The absence of specific factual findings of intent to defraud is a significant distinction.

That is particularly true because here, unlike in *Jennings*, there is no record evidence that Clark acted willfully or maliciously. In *Jennings*, the Eleventh Circuit was careful to point out that the there was no legitimate purpose for the transfer at issue.[30] Here, there was. When Crawford paid off BGW's debt to LaSalle Bank, BGW simply assigned the same collateral securing the BGW loan—i.e., the trademarks—to Crawford until BGW repaid Crawford through royalties. In effect, the transfer of the trademarks to Crawford simply secured Clark's obligation to repay Crawford the amounts she paid LaSalle Bank. Because there was a legitimate purpose for the transfer, Perry cannot prove as a matter of law that Clark acted maliciously.[31]

## Conclusion

Perry must prove that Clark acted maliciously in transferring the trademarks to Crawford. But Perry cannot make that showing as a matter of law because there was a legitimate purpose for the transfer. Because Perry cannot prove Clark acted maliciously as a matter of law, Clark is entitled to summary judgment on Perry's § 523(a)(6) claim. The Court will enter a final judgment in favor of Clark.

Attorney Richard Feinberg is directed to serve a copy of this Memorandum Opinion on interested parties who are non-CM/ECF users and file a proof of service within 3 days of entry of the opinion.

---

[29] *Id.*

[30] *Id.*

[31] At the hearing on the parties' summary judgment motions, Perry suggested that Clark transferred the trademarks to Crawford as payment of BGW's loan—not as collateral to secure BGW's loan obligations. Assuming that is the case, the transfer cannot be malicious because it served a legitimate purpose—i.e., the repayment of a debt.

Case 8:14-ap-00133-MGW    Doc 58    Filed 12/15/15    Page 8 of 8

Richard B. Feinberg
Debt Relief Legal Group, LLC
*Counsel for Defendant*

Richard S. Geller
Fishback Dominick
*Counsel for Plaintiff*

8